No. 2941

Second Circuit

---

CROOKS v. BROWN PAPER MILL CO.

---

(May 13, 1927. Opinion and Decree.)
(June 28, 1927. Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Appeal—Par. 625.**
The finding of the trial court on an issue of fact will not be reversed unless manifestly erroneous.
Wood vs. K. C. S. Ry. Co., 4 La. App. 23.

2. **Louisiana Digest—Master and Servant —Par. 160j.**
Testimony of an injured employee suing for compensation under the Employers' Liability Act corroborated by his co-laborers that since the removal of his spleen necessitated by his injuries he has been unable to stand erect, bend over or lift anything heavy, is not overcome by the testimony of a surgeon that the removal of the spleen by a surgical operation which opens the abdomen and leaves a scar "like the gulf" should not produce permanent total disability to do work of a reasonable character; especially when there is a conflict in the testimony of the medical experts who testified as to the effects of removal of the spleen, and "doctors disagree and soundest casuaists doubt."

Appeal from the Fourth Judicial District Court of Louisiana, Parish of Ouachita. Hon. Percy Sandel, Judge.

Action by Earl Crooks against Brown Paper Mill Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for plaintiff, appellee.

Hardin, Hardin & Cavanaugh, of Leesville, attorneys for defendant, appellant.

STATEMENT OF THE CASE

REYNOLDS, J. This is a suit under the Employers' Liability Act by Earl Crooks against the Brown Paper Mill Company, Inc., to recover $12.75 per week for 400 weeks, the first payment to be declared due November 25, 1925, with legal interest on each payment from its maturity, as for permanent total disability to do any work of a reasonable character resulting from an injury sustained by plaintiff on November 15, 1925, while in the employment of defendant and in the course of and growing out of his employment.

Plaintiff was knocked into unconsciousness and his spleen ruptured by being struck by an empty paper reel weighing approximately a thousand pounds that was being moved by the use of an electric crane.

And in order to save his life a surgical operation was performed and his spleen removed.

He alleges that since the removal of his spleen he has been unable to stand erect, to stoop over or to do manual labor of any kind that requires the lifting of anything having weight.

Defendant denied liability, and alleged that—

"while the plaintiff received a painful hurt and his spleen was removed, he now suffers no disability and can now work as well as he could before the injury."

On these issues the case was tried and there was judgment in favor of the plaintiff as prayed for and the defendant appealed.

## OPINION

The question to be determined in this case is one of fact, namely: Whether or not plaintiff has recovered from the effects of the surgical operation to such extent as to enable him to do work of a reasonable character.

Our learned brother of the District Court, who heard the witnesses and saw them testify, found for the plaintiff who testified:

### (Record, page 6.)

"Q. Explain to the court the manner in which you were injured, and the nature of your injuries, as well as you can, at the time you were injured.

"A. Just how it was done and everything about it?

"Q. Yes, sir.

"A. Well, I was cleaning two big rolls of paper. I got the 'I' beam on the crane, that weighed about seven hundred pounds; we were picking up the empty reel—another fellow swung the crane against me and mashed me against a big roll of paper, and mashed me in the side unconscious.

"Q. How long were you unconscious?

"A. About two hours. Until I got to the hospital.

"Q. Were you taken directly to the hospital?

"A. Yes, sir; I was taken to the office first and put on a cot.

"Q. Who attended you; what physician?

"A. Dr. Graves.

"Q. Dr. Graves?

"A. Dr. J. Q. Graves.

"Q. What did he inform you?

"A. He said I had to be operated on.

"Q. Did he tell you what was the matter with you?

"A. No, sir.

"Q. Did he operate on you?

"A. Yes, sir.

"Q. What did he do when he operated on you?

"A. Removed my spleen.

"Q. Was anything injured besides your spleen?

"A. No, sir; just had a hemorrhage.

* * *

### (Testimony, page 4.)

"Q. What was the length of the incision that was necessary to remove your spleen?

"A. What was that?

"Q. What was the length of the scar?

"A. About nine inches one way and about four or five another.

"Q. Have you noticed since your operation in (any) effects or incapacity?

"A. Yes, sir; I sure have.

"Q. Describe to the court as well as you can your present condition.

"A. Well, the first thing, I cannot straighten up; and it pulls me every time I pull myself up, under the ribs here. Have a hurting in my side all the time. My stomach swells up on me once in a while.

"Q. What was that you said you had in your stomach?

"A. Hurting in my side, here.

"Q. Hurting in the side?

"A. Yes, sir.

"Q. And your stomach swells up?

"A. Yes, sir, once in a while; and stay constipated all the time.

"Q. Are you able to lift the weight you could before you were injured?

"A. No, sir."

E. J. Riles ·testified. (Testimony, page 15.)

"Q. (By the Court.) Just tell what you know about it.

"A. He was not trying to work, for the simple reason he was complaining all the time. He informed me that he was constipated and went to see Dr. Graves and Dr. Graves said to eat plenty of vegetables and your constipation will cease. A man cannot eat mustard greens altogether. He was constipated and ·in bed two weeks ago and he couldn't get Dr. Graves and he called Dr. Wolff in and Dr. Wolff treated him, and I asked Dr. Wolff what his trouble was—

"Q. Just tell what you know and what you saw. You say he cannot work. How do you know?

"A. He complains—I do not know he cannot work—he complains that he can not work.

"Q. Mr. Crooks ever come to you and ask you to get a doctor for him?

"A. About ten days ago he come to my office late one evening and said I have a hurting in my side here and pulled his shirt tail up—

(By the Court: That's not material.)

"Q. He came up and asked you to call a doctor?

"A. Yes, sir."

Charlie Nobles testified, page 16 of testimony.

"Q. Were you working with Mr. Crooks several months ago at the pump station?

"A. Yes, sir.

"Q. For the Crusader Pipe Line Company?

"A. Yes, sir.

"Q. What was the condition of Mr. Crooks when he was working?

"A. Well, he was all the time complaining of being sore in the morning in his side, and couldn't hardly straighten up, for one thing; two or three times at nights he was sick and couldn't get out the next morning. Something the matter with his side and stomach. Some hard lifting would come up and some of us boys would take it off of him, myself or some other boy—not to let him lift anything heavy—too many men hurt themselves after they are operated on."

Dr. J. Q. Graves testified, testimony, page 60.

"Q. Doctor, could the removal of the spleen have anything to do with causing chronic constipation?

"A. I cannot answer that question. That is such a disputed and moot question that the greatest authorities we have today are arguing on that. I cannot answer that personally."

A careful reading of all the testimony in the case convinces us that the judgment of the District Court is correct and accordingly it is affirmed.